# AFFIDAVIT

I, Christina Grady, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent at the Federal Bureau of Investigation ("FBI"). I have been an FBI Special Agent for eight years. I am presently assigned to the White Collar Squad of the FBI Boston, Providence Residence Agency. Based on my training and experience among other things, I am familiar with the investigation of financial crimes which include the following; identity theft, access device fraud, bank fraud, and wire fraud. During the course of my career with the FBI, I have investigated numerous financial crimes involving fraud.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant against DAVID ADLER STAVELEY, a/k/a "Kurt David Sanborn," a/k/a "David Sanborn" ("STAVELEY")[1] and DAVID BUTZIGER ("BUTZIGER"). As will be shown below, there is probable cause to believe that from on or about April 6, 2020 through April 27, 2020, STAVELEY and BUTZIGER: (i) knowingly conspired with one another to knowingly make false statements for the purpose of obtaining a loan and for the purpose of influencing in any way the action of the Small Business Administration, contrary to 15 U.S.C. § 645(a), in violation of 18 U.S.C. § 371 (Count One – Conspiracy to Make False Statement to Influence the SBA); and (ii) knowingly conspired with one another to execute a scheme to obtain money, funds and property owned by, or under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations and promises, contrary to 18 U.S.C. § 1344(2), in violation of 18 U.S.C. § 1349 (Count Two – Conspiracy to Commit Bank Fraud). In addition, there is probable cause to believe that from on or about April 6, 2020 through April 27, 2020,

---

[1] In 2018, Kurt Sanborn applied in the Commonwealth of Massachusetts to have his name changed to David Adler Staveley, citing religions reasons.

DAVID BUTZIGER did knowingly execute and attempt to execute a scheme to obtain money, funds and property owned by, or under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations and promises, in violation of 18 U.S.C. § 1344(2) (Count Three – Bank Fraud). There is also probable cause to believe that from on or about April 6, 2020 through April 27, 2020, DAVID ADLER STAVELEY, during and in relation to the felony offense of bank fraud, contrary to 18 U.S.C. § 1344, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit the name and social security number of G.S., in violation of 18 U.S.C. § 1028A (Count Four – Aggravated Identity Theft).

3.  As set forth below, investigation has revealed that STAVELEY and BUTZIGER applied for loans guaranteed by the Small Business Administration designed to assist small businesses and their employees during the coronavirus crisis. STAVELEY and BUTZIGER fraudulently sought $543,959 in forgivable loans guaranteed by the Small Business Administration ("SBA") by claiming to have dozens of employees earning wages at four different business entities when, in truth and in fact, there were little to no employees working for any of the listed entities.

### The CARES ACT and the Paycheck Protection Program

4.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses,

through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, over $300 billion in additional PPP funding was authorized by Congress.

5. The PPP allows qualifying small-businesses and other organizations to receive loans with a maturity of 2 years and interest rate of 1%. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within 8 weeks of receipt and use at least 75% of the forgiven amount for payroll. The amount of PPP funds a business may receive is determined by the number of employees employed by the business and their average payroll costs for a period of 2.5 months. Businesses applying for a PPP loan must provide documentation, such as IRS Forms 940 and 941, to confirm that they have in the past paid employees the compensation listed on the application.

6. The PPP is overseen by the SBA, which is headquartered at 409 3rd Street SW, Washington, DC 20416, and has authority over all loans. Individual PPP loans, however, are issued by private approved lenders (most commonly, banks and credit unions), who receive and process PPP applications and supporting documentation, and then make loans using the lenders' own funds. To date, over 4,900 private lenders have participated in the PPP.

Information Provided by Complaining Witness

7. A complaining witness ("CW") provided information to the Chief of Police of Berlin, Massachusetts concerning COVID-19 relief fraud he believed was being conducted by an individual known to him as Kurt Sanborn (defendant STAVELEY). The CW reported that Sanborn was committing fraud by posing as his brother G.S. in real estate transactions. According to the CW, Sanborn had posed as G.S. in the purchase of property in Warwick, Rhode Island at the location of a closed restaurant named Remington House. The CW stated that

Sanborn was fraudulently claiming to have dozens of employees at two Rhode Island restaurants (Remington House and Top of the Bay), when in fact he did not even own one of the two restaurants and the other had yet to open.

8. The CW indicated he had access to STAVELEY's email account and reviewed emails to and from STAVELEY and BUTZIGER that indicated that they were in the process of fraudulently attempting to obtain loans guaranteed by the SBA for COVID-19 relief through the Paycheck Protection Program. The CW provided law enforcement copies of these emails, which he accessed on his own initiative.[2] The FBI later obtained a search warrant to Google of the relevant email accounts; a portion of the pertinent emails is discussed below. Through the email search warrant, the FBI recovered copies of emails provided previously by the CW, as well as other relevant emails.

### Oakland Beach Restaurant Group, LLC SBA Loan Application

9. Oakland Beach Restaurant Group LLC, d/b/a "Top of the Bay," is a Rhode Island corporation that was established on or about March 11, 2020. Defendant BUTZIGER is listed as the registered agent for the corporation. The principal office for the corporation is listed as 898 Oakland Beach Avenue, Warwick, RI, the address of "Top of the Bay" restaurant.

10. A loan application under the Paycheck Protection Program was received by BankNewport on or about April 14, 2020. The loan application was from Oakland Beach Restaurant Group LLC, d/b/a "Top of the Bay," and requested a loan in the amount of $185,750. The email address listed on the application was greggsanborn0810@gmail.com. A handwritten

---

[2] Upon receipt of these emails, the FBI directed the CW to refrain from looking at any further of Sanborn's emails.

4

application was provided to the bank. The application indicated that the average monthly payroll of Oakland Beach Restaurant Group, LLC was $53,000 with 26 employees.  The application was signed in the name of G.S. on or about April 6, 2020 and the social security number of G.S. was provided on the application. On or about April 14, 2020, an individual purporting to be G.S. (believed to be his brother STAVELEY, a/k/a "Kurt Sanborn") emailed a BankNewport employee the requested 941 Form for Oakland Beach Restaurant Group, LLC from email account greggsanborn0810@gmail.com. A 941 Form is a Department of the Treasury -Internal Revenue Service form used for Employers Quarterly Federal Tax Form.  The 941 Form was sent from email account greggsanborn0810@gmail.com. The 941 Form provided by STAVELEY listed wages for 2020 1st Quarter wages to be $158,723.52. The section asking for the number of employees was left blank. BankNewport has not funded the loan to date.

    11. Top of the Bay restaurant has been closed since the middle of March 2020 due to the ban on the operating of dine-in restaurants due to the coronavirus. According to the R.I. Secretary of State, Division of Corporation's website, Top of the Bay restaurant is owned by corporation Ocean View Restaurant and Lounge, Inc. The President of this company is S.K. S.K. is also the registered agent of Saba, LLC, which owns the land at 898 Oakland Beach Avenue, Warwick, R.I., where Top of the Bay restaurant is located. Top of the Bay restaurant and its land are currently owned and operated by S.K. and/or corporations under his control. Neither STAVELEY nor BUTZIGER have any ownership interest in this location. Nor do they have any employees working at this restaurant. The representations in the PPP loan application that Oakland Beach Restaurant Group, LLC has 26 employees and a $53,000 average monthly payroll are therefore false and fraudulent.

12. On or about April 20, 2020, an agent of the IRS spoke to an individual at the Rhode Island Department of Revenue, Division of Taxation. The agent was informed that no wages were ever reported for Oakland Beach Restaurant Group, LLC (Top of the Bay). In addition, the IRS disclosure office has advised that the IRS has no record of a 941 Form having ever been filed by Oakland Beach Restaurant Group, LLC, but notes that the deadline for filing this form has been extended due to the coronavirus crisis.

13. On April 28, 2020, the affiant and IRS-CI Special Agent Troy Niro interviewed S.K. S.K. stated that he has been the owner of Top of the Bay restaurant for many years. S.K. stated that Top of the Bay had to temporarily shut down recently due to the coronavirus. S.K. stated that for about the last year he has been in negotiations to sell Top of the Bay restaurant to a man known to him as "David Sanborn." S.K. identified a photo of STAVELEY, a/k/a "Kurt Sanborn" as the "David Sanborn" with whom he has been negotiating. According to S.K., he and David Sanborn agreed on a purchase price for the restaurant but the deal recently fell through when Sanborn was unable to secure financing. S.K. stated that at no time did Sanborn ever acquire any ownership interest in Top of the Bay and that Sanborn never had any employees at that location. S.K. had no knowledge of Sanborn applying for an SBA loan under the name of Top of the Bay restaurant and further stated that he recently applied himself for an SBA loan for Top of the Bay restaurant.

<u>Apponaug Restaurant Group LLC SBA Loan Application</u>

14. Apponaug Restaurant Group, LLC was incorporated in the State of Rhode Island on or about November 25, 2019. Its listed principal office address is 3376 Post Road, Warwick, RI, the address of a restaurant named Remington House that has been closed since approximately November 2018. The property at this address was purchased by the Apponaug Restaurant Group,

LLC on January 21, 2020. The listed managers of the Apponaug Restaurant Group LLC are S.S. and G.S.

15. BankNewport provided law enforcement with loan documents associated with the applications submitted by "G.S." According to bank records, Apponaug Restaurant Group LLC, d/b/a "Remington House," located at 3376 Post Road, Warwick, RI, submitted an application for the Paycheck Protection Program loan on or about April 6, 2020. The email address listed on the application was greggsanborn0810@gmail.com. The loan application for the Apponaug Restaurant Group LLC was for $144,050. It provided that this entity had 18 employees and an average monthly payroll of $46,000. BankNewport has not funded the loan to date.

16. A comment in a document called EDD Review Analysis produced by BankNewport stated: "Remington House closed 11/18. According to the Warwick Tax Assessors website (http://gis.vgsi.com/warwickri/Parcel.aspx?Pid=35368) – Apponaug Restaurant Group LLC purchased 3376 Post Road on 01/22/2020 from Kereb Realty LLC, and drive by of the property on 04/17/2020 by BSA Officer that the property is currently in disrepair. There were dumpsters on-site and large red/orangey notices indicating "Stop Work" posted on door and windows of property. The Restaurant has not been functional since it closed in 11/2018."

17. The Remington House restaurant has been closed since November 2018 and is currently in disrepair. The representations in the PPP loan application that Apponaug Restaurant Group LLC has an average monthly payroll of $46,000 and has 18 employees are false and fraudulent. On or about April 20, 2020, an agent for the IRS spoke to an individual at the Rhode Island Department of Revenue, Division of Taxation. The agent was informed that no wages were ever reported for the Apponaug Restaurant Group, LLC (Remington House). In addition,

the IRS disclosure office has advised that the IRS has no record of a 941 Form having ever been filed by Apponaug Restaurant Group, LLC.

New Flat Penny LLC SBA Loan Application

18. A loan application under the Paycheck Protection Program Application was received by BankNewport on or about April 14, 2020. The loan application name was New Flat Penny LLC, d/b/a "On The Trax," in the amount of $108,777.50. The application indicated an average monthly payroll of $36,000 with 22 employees. The email address listed on the application was greggsanborn0810@gmail.com. The application was signed by an individual purporting to be G.S. on April 6, 2020. BankNewport has not funded the loan to date.

19. On The Trax is the name of a former restaurant located in Berlin, MA. It is owned by New Flat Penny, LLC, a Massachusetts company owned by G.S. According to information received from the Berlin, MA Police Department, the restaurant closed on or about March 10, 2020, after the Town of Berlin revoked the liquor license of this restaurant for numerous reasons, including that Kurt Sanborn misrepresented that his brother G.S. was the owner of the restaurant. On The Trax restaurant has been closed since at least March 10, 2020. As the restaurant was closed when the SBA loan application was submitted on or about April 6, 2020, there were not any employees of New Flat Penny, LLC when the loan application was submitted.

20. The Berlin, MA Police Department has interviewed a number of the former employees of On The Trax who reported that the restaurant closed after its liquor license was revoked in March 2020 and that they did not receive their final paychecks for the work they had already performed prior to the restaurant's closure. I have also reviewed a copy of a message sent by defendant DAVID BUTIZGER to all On The Trax employees on March 9, 2020, announcing that the restaurant was shut down due to the Town's decision to revoke its liquor

license, at least until such time as an appeal could be heard on the decision to revoke the liquor license. The representations in the April 6, 2020 PPP loan application that New Flat Penny, LLC had 22 employees with an average monthly payroll of $36,000 are therefore fraudulent.

21. I spoke to the Chief of the Berlin Massachusetts Police Department on April 22, 2020. The Police Chief advised me that he became aware that David "Kurt" Sanborn was signing forms and writing checks in the name of his brother G.S.. The Police Chief had earlier interviewed G.S. who told him that his brother Kurt Sanborn had signed G.S.'s name to a form submitted to the Massachusetts Alcoholic Beverages Control Commission Amendment. The Police Chief informed me that the Board of Selectman convened on March 2, 2020 to discuss the suspension of the liquor license for the New Flat Penny. The board suspended the license as of March 10, 2020. A certified letter was sent to G.S. concerning the suspension of the liquor license. The Police Chief stated the restaurant could have remained open without serving alcohol, but the restaurant was closed by the owners at the time of the suspension. The Police Chief stated that former employees of the New Flat Penny have been interviewed. The former employees stated that they have yet to receive their last pay checks and they have not been in the restaurant since the owners closed the doors.

## Dock Wireless SBA Loan Application

22. On or about April 6, 2020, an entity called Dock Wireless submitted an application to BankNewport for a $105,381.50 SBA loan under the PPP program. The application was signed by defendant DAVID BUTZIGER, who claimed to be the 100% owner of this entity. In the loan application, BUTZIGER represented that Dock Wireless had 7 employees with an average monthly payroll of $42,152.60. BUTIZIGER also submitted an IRS Form 941 to BankNewport which provided that Dock Wireless had paid 6 employees a total $126,500 during

the first quarter of 2020. The document lists BUTZIGER as the owner but is neither dated nor signed. BankNewport has not funded the loan to date.

23.     On or about April 13, 2020, BUTZIGER submitted to BankNewport a 2019 IRS Schedule C form in support of the Dock Wireless SBA loan application. That form listed BUTZIGER as the owner of an unincorporated entity named Dock Wireless, which had $492,197 in gross receipts in 2019. It reported no wages having been paid in 2019 but did provide that $212,487 was paid in "Contract Labor" in 2019.

24.     On or about April 22, 2020, an IRS agent received information from the Rhode Island State Department of Revenue that it had no records of employee wages having even been paid by BUTZIGER or Dock Wireless. In addition, the IRS disclosure office has advised that the IRS has no record of a 941 Form having ever been filed by Dock Wireless. The IRS also has no record of a Schedule C form being filed for tax year 2019 by BUTZIGER for Dock Wireless, but notes that the deadline for the filing of 2019 tax returns has been extended due to the present crisis.

25.     On or about April 27, 2020, an undercover FBI agent, posing as a compliance officer with BankNewport, had a recorded telephone conversation with defendant BUTZIGER. During this call, BUTZIGER stated that he was the owner of Dock Wireless and that since January 1, 2020, Dock Wireless had seven full-time employees on its payroll, including himself. BUTZIGER stated that these employees, whom he identified by name as H.R., L.J., D.R., L.H., D.J., and M.V.H., were previously independent contractors of Dock Wireless but that due to an increase in business, they were brought on as full-time employees on January 1, 2020. BUTZIGER further stated that he was only able to keep paying these employees through the end

of March 2020 but that these employees have continued to work for him through April 2020 and are owed money that he will pay from the SBA loan for which he applied.

26. On or about April 29-30, 2020, agents interviewed four of the individuals identified by BUTZIGER as full-time employees of Dock Wireless. Three of the individuals, L.J., D.J. and H.R., stated that they knew BUTZIGER in their personal lives but they had never performed any work for Dock Wireless. (L.J. and H.R. stated that they previously worked with BUTZIGER in a gymnastics studio.) L.H., one of the individuals identified by BUTZIGER as a full-time employee of Dock Wireless, told agents that she is a full-time employee of a child welfare agency where she works as a graphic designer. L.H. further stated that she has done approximately 4-5 graphic design projects in the last several years for a company co-owned by BUTZIGER for which she earned less than $2,000 in total. L.H. is not and never has been a full-time employee of BUTZIGER or Dock Wireless. Contrary to the information provided by BUTZIGER, there is no evidence that Dock Wireless ever had seven employees or a monthly payroll of $42,152.60, as represented in the PPP loan applications for that entity.

27. An IRS agent has reviewed the bank records from BankNewport for the bank accounts opened by BUTZIGER, including an account in the name of Dock Wireless. A review of these accounts shows minimal deposits and debits with no payments that appear to be employee salaries. Other than a single $1,000 payment to L.H., there are no payments whatsoever to any of the individuals BUTZIGER identified as employees of Dock Wireless.

Emails Between Defendants Staveley and Butziger

28. On or about April 24, 2020, the FBI served a search warrant on Google, Inc. for documents relating to three email accounts tied to defendant DAVID STAVELEY, a/k/a "Kurt Sanborn." These email accounts included the email address listed on the SBA applications,

greggsanborn0810@gmail.com (registered to G.S.), the email account dsanborn1737@gmail.com (registered to David Sanborn) and the email account kdsand67@gmail.com, which is listed by Google as the recovery email address for the other two email accounts listed above. Based on the content in these accounts (including personal documents such as resumes), I believe they were being used by defendant STAVELEY, a/k/a "Kurt Sanborn."

29. Emails reviewed from the kdsand67@gmail.com account indicate the account was used by STAVELEY. For example, the kdsand67@gmail.com account contained a completed state of Massachusetts change-of-name form for STAVELEY (seeking to change his name from Kurt Sanborn to DAVID STAVELEY). Other documents from the kdsand67@gmail.com account are in the name of "Kurt Sanborn." Based on these emails, and the fact that the kdsand67@gmail.com account was the recovery account for greggsanborn0810@gmail.com and dsanborn1737@gmail.com, it appears that STAVELEY had access to or controlled all three email accounts.

30. Google produced email communications to and from these accounts, which revealed evidence that defendant STAVELEY and BUTZIGER were conspiring to fraudulently obtain the SBA backed loans pursuant to the Paycheck Protection Program. For example, on or about April 11, 2020, an email was sent from dsanborn1737@gmail.com to BUTZIGER at email address david@butziger.com. The subject line of the email read: "Re: New Flat Penny LLC PPP Loan submission.pdf." The text of the email provided: "Can you replicate this for Oakland Beach Restaurant Group LLC and Apponaug Restaurant Group LLC? Thanks." The follow up email communication, dated April 11, 2020 from BUTZIGER to STAVELEY, stated: "I can create a bull shit 2020q1 for Oakland beach if you want." On or about April 11, 2020, STAVELEY

12

emailed BUTZIGER with the following response to the previous email: "We are going to need the same stuff for Oakland Beach and Apponaug Restaurant Groups. However we dream that up." On or about April 13, 2020, an email was sent from STAVELEY to BUTZIGER with the subject line: "Re: 941's". The email communication stated: "These look good. It says we need payroll reports for the past 12 months? Can we get what we have from toast payroll on New Flatt Penny LLC? And should we dream up 1st quarter on the other two? Please advise…..thank you David." It is clear from these email communications that defendant BUTZIGER assisted defendant STAVELEY in creating fraudulent documents that defendant STAVELEY then submitted to BankNewport to apply for fraudulent loans under the Paycheck Protection Program.

Recorded Undercover Conversation with STAVELEY

31.    On or about April 24, 2020, an FBI agent, posing as a compliance officer with BankNewport, engaged in a recorded telephone call with a man posing as G.S., believed to be defendant STAVELEY, a/k/a "Kurt Sanborn." The man posing as G.S. spoke on telephone number 978-802-5516, a number which is known to be used by STAVELEY. The actual G.S. informed law enforcement that this phone number was the number used by his brother STAVELEY, a/k/a "Kurt Sanborn." In addition, S.K., the actual owner of "Top of the Bay" restaurant stated that this was the phone number used by the person he knew to be "David Sanborn." Finally, on April 24, 2020, BUTZIGER and STAVELEY made a police report with the Warwick Police Department, alleging that STAVELEY's former girlfriend was holding some construction equipment that belonged to them. The phone number STAVELEY provided to the Warwick Police Department as his own was the same number: 978-802-5516.

32.    During the conversation with the undercover agent, the person posing as G.S. stated that he currently owns all three restaurants (On the Trax, Remington House and Top of the

Bay) and the land on which they are located. "G.S" stated that he took over operation of Top of the Bay in November 2019 and formally acquired ownership of Top of the Bay on January 1, 2020. "G.S." further stated that On the Trax was still operating on a limited basis preparing take-out food but that he had to temporarily shut down Remington House and Top of the Bay due to the coronavirus. "G.S." further stated that prior to the shutdown, he had 20-25 employees at On the Trax, 25-35 employees at Remington House and 25-35 employees at Top of the Bay. He further stated that he paid all these employees until the end of March (two weeks into the shutdown), at which time he was forced to furlough them. Finally, in an ironic twist, "G.S." complained about the reports of large businesses being able to obtain SBA loans under the Paycheck Protection Program, saying that "the whole thing has become a little bit of a sham."

### Interview of G.S.

33. On April 28, 2020, the affiant and IRS-CI Special Agent Troy Niro interviewed G.S., the brother of defendant STAVELEY, a/k/a "Kurt Sanborn." G.S. acknowledged that he gave STAVELEY consent to open the On the Trax restaurant in G.S.'s name and that he signed a Power of Attorney form for this purpose. G.S. stated that this was done so that his brother could purchase and run the restaurant without having to disclose his criminal history.

34. G.S. further stated that he had no knowledge of any corporations or restaurants being opened in Rhode Island in his name. He stated that he had no knowledge of Oakland Beach Restaurant Group, LLC, Apponaug Group LLC, Top of the Bay restaurant or Remington House.

35. G.S. further stated that he did not apply for or have knowledge of any loans being applied for by these entities. When shown the signature of G.S. on the PPP loan application forms, G.S. stated that it was not his signature but that it was likely his brother STAVELEY,

14

a/k/a "Kurt Sanborn," who forged his signature. G.S. further confirmed that his social security number was used on these application forms without his consent.

36.     G.S. also stated that he did not know that a piece of property had been purchased in Warwick, RI by Apponaug Restaurant Group, LLC or that his name was listed on the $406,000 mortgage taken out on this property. Finally, G.S. stated that he did not know that bank accounts had been opened in his name, date of birth and social security number at BankNewport.

## CONCLUSION

37.     Based on the forgoing, there is probable cause to believe that from on or about April 6, 2020 through April 27, 2020, defendants DAVID ADLER STAVELEY, a/k/a "Kurt David Sanborn," a/k/a "David Sanborn" and DAVID BUTZIGER: (i) knowingly conspired with one another to knowingly make false statements for the purpose of obtaining a loan and for the purpose of influencing in any way the action of the Small Business Administration, contrary to 15 U.S.C. § 645(a), in violation of 18 U.S.C. § 371 (Count One – Conspiracy to Make False Statement to Influence the SBA); and (ii) knowingly conspired with one another to execute a scheme to obtain money, funds and property owned by, or under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations and promises, contrary to 18 U.S.C. § 1344(2), in violation of 18 U.S.C. § 1349 (Count Two – Conspiracy to Commit Bank Fraud). In addition, there is probable cause to believe that from on or about April 6, 2020 through April 27, 2020, defendant DAVID BUTZIGER did knowingly execute and attempt to execute a scheme to obtain money, funds and property owned by, or under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations and promises, in violation of 18 U.S.C. § 1344(2) (Count Three – Bank Fraud).  In addition, there is probable cause to believe that from on or about April 6, 2020 through April 27, 2020,

defendant DAVID ADLER STAVELEY, a/k/a "Kurt David Sanborn," a/k/a "David Sanborn," during and in relation to the felony offense of bank fraud, contrary to 18 U.S.C. § 1344, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit the name and social security number of G.S., in violation of 18 U.S.C. § 1028A (Count Four – Aggravated Identity Theft).

Christina Grady
Special Agent

Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

May 4, 2020
*Date*

*Judge's signature*

Providence, RI
*City and State*

Lincoln D. Almond, US Magistrate Judge
*Printed name and title*