UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID ADLER STAVELEY, a/k/a "Kurt Sanborn," a/k/a "David Sanborn" | Case No. 1:20-MJ-00034-LDA |

### GOVERNMENT'S MOTION TO AMEND ORDER OF RELEASE TO ADD CONDITION OF HOME CONFINEMENT WITH ELECTRONIC MONITORING

The Government respectfully requests that the Court amend the conditions of release it imposed upon defendant David Staveley ("Staveley") to add the condition of home confinement with electronic monitoring. The Government seeks this relief because defendant violated the conditions of release set by this Court a mere three days after his arrest by traveling to Connecticut without permission to do so. Defendant's willful disregard of the Court's order, together with the danger to the community and risk of flight he poses, warrants much more stringent conditions of release.

### Defendant's Violation of Condition of Release

Following defendant's initial appearance on May 5, 2020, the Court set conditions of release which, among other things, prohibited defendant from traveling outside the State of Massachusetts (or Rhode Island, for court appearances or to meet with counsel) without first obtaining permission of the Probation Department or the Court. The Court was very clear in expressing to defendant that it viewed the alleged conduct underlying this case as very serious and that it would not tolerate any

violations of the release conditions set by the Court. Less than three days later, defendant blatantly violated the conditions of release by travelling without authorization to Connecticut where he showed up uninvited to the house of a former girlfriend.

As detailed in the attached Affidavit of FBI Special Agent Christina Grady, on the morning of May 8, 2020, C.P., a resident of Essex, Connecticut, contacted Agent Grady and stated that she had been dating Staveley for a short period of time prior to his arrest in this case on May 5, 2020. C.P. did not know much about Staveley and believed him to be an "Intelligence Officer" with the United States Navy. Upon learning of Staveley's arrest, C.P. found information online concerning his prior arrests, including articles concerning Staveley's harassment of other women. C.P. informed Staveley that she did not want to see him anymore and Staveley responded with a barrage of telephone calls and text messages, indicating his desire to see her. C.P. was concerned for her safety and contacted Agent Grady, who advised C.P. to contact local law enforcement if she had concerns for her safety.

At approximately 1:20 p.m. on May 8, 2020, C.P. again contacted Agent Grady. C.P. stated that shortly beforehand, Staveley unexpectedly arrived at her house in Connecticut. She allowed him to enter the house and had a brief conversation with Staveley before telling him that she had been in touch with a female law enforcement official about his conduct toward her after which Staveley appeared to be in a rush to leave. Staveley requested C.P. not to notify law enforcement that he came to her house. As Staveley was leaving, C.P. told him that she would pray for him. Staveley responded

by stating: "No, you need to pray for them." C.P. understood this to be a veiled threat against law enforcement officials. C.P. informed Agent Grady that she was afraid that Staveley would hurt her.

C.P. further stated that prior to Staveley's arrival at her house on May 8, 2020, she informed Scott Wisner, a friend of C.P. who is a Detective with the Connecticut State Police, of her concerns about Staveley. When Staveley arrived at her house on May 8, 2020, for her own protection, C.P. sent Wisner a text message stating: "He's at my house he just showed up" and then "He's leaving said fight say anything can you call fbi boston please." Wisner then sent a text to CP: "You should ask him to leave, and if you need police call 911 and advise that there's an unwanted party there." C.P. replied to this text by writing: "He left. Said not to tell I'm Calling fbi now. Omg I'm shaking holy carp [crap]."

<u>Argument</u>

More stringent conditions of pretrial release are necessary as Staveley has demonstrated an unwillingness to abide by the Court's directives, is a danger to the community and poses a risk of flight. "A person who has been released under section 3142 . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Upon motion of the government, the judicial officer shall enter an order for revocation and detention, if after a hearing, the judicial officer:

    **(1)** finds that there is--
        **(A)** probable cause to believe that the person has committed a
        Federal, State, or local crime while on release; or

3

> **(B)** clear and convincing evidence that the person has violated any other condition of release; and
>
> **(2)** finds that--
>
> **(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> **(B)** the person is unlikely to abide by any condition or combination of conditions of release.

Id.

"A finding of probable cause pursuant to the first prong gives rise to a rebuttable presumption that no conditions will assure that the person will not pose a danger to the safety of the community under the second prong." *United States v. Gennaco*, 834 F.Supp.2d 38, 40 (D. Mass. 2011) (upholding the revocation of the defendant's bond based upon the judicial officer's finding that there was probable cause to believe the defendant committed another crime while on pre-trial release, that the defendant violated the travel restriction, and the defendant violated the no-contact order with respect to victims or potential victims). The defendant may rebut the presumption, but even if he produces some evidence in rebuttal, the presumption "'retains evidentiary weight'" and may be used by the government in support of its motion for detention. Id.

In this case, it could well be argued that defendant should be ordered detained due to his flouting of the pretrial release conditions imposed by the Court and the danger to the community and risk of flight he poses. Indeed, but for the current circumstances in this country due to COVID-19, the Government may have recommended pretrial detention at this time. At this point, however, the Government is recommending that defendant be placed on home confinement with electronic

4

monitoring and that he be given one final opportunity to comply before being detained.

The Government makes the recommendation for home detention with electronic monitoring for three reasons. First and foremost, by so quickly and deliberately flouting the Court's conditions, defendant has made clear that he cannot be trusted to abide by those conditions. This is a very serious case, involving the attempted fraud on a government program designed to help small businesses and its employees in a time of crisis. The Court very clearly emphasized to defendant the seriousness with which it views this case. Although the Court previously denied the Government's recommendation for home detention, the Court made crystal clear to defendant that it would not tolerate any violations of the conditions of release it set. This warning was apparently disregarded by defendant when, less than three days later, he traveled to Connecticut without permission of the Probation Department or the Court. Defendant's contempt for the Court and the Probation Department was further demonstrated when, on May 9, 2020, defendant blatantly lied to the Probation Department by stating that he had not had any contact with C.P. in over a week. The dozens of text messages the FBI has reviewed from defendant to C.P. discussing his arrest clearly disprove this statement.

Second, the government believes that Staveley poses a danger to the community that can be somewhat mitigated by placing him on home detention with electronic monitoring. Although defendant's actions toward C.P. may fall short of outright harassment and intimidation, they left her extremely concerned for her own safety. This is not the first time defendant has caused women to feel unsafe. In fact, his criminal

5

record shows that he engaged in harassing and threatening conduct with at least four other women beforehand.   On June 4, 2014, defendant was arrested by the Warwick Police Department on charges of Felony Stalking/Harassment and Violation of a Protection Order. On August 28, 2014, defendant was again arrested by the Warwick Police Department, this time for Willful Trespass and Violation of a Protective Order. In October 2014, defendant entered a *nolo contendere* plea to the Willful Trespass charge and was sentenced to 6 months of probation; defendant was also ordered to have no contact with a victim, an East Greenwich, RI woman named M.W.

On November 29, 2016, defendant was arrested by the Wayland, MA police for criminal harassment. According to press reports at the time, defendant was arrested after engaging in a series of escalating and harassing conduct toward a school principal in Wayland, MA, including bombarding this victim with text messages and following her to a restaurant. This behavior culminated in defendant putting flyers on the windshields of cars parked at Wayland Town Hall and at the local high school, stating that the woman consumes large amounts of alcohol and was promiscuous. Defendant was placed on supervised probation in November 2018 and the case was ultimately dismissed in December 2019. Records from the State of Massachusetts further reveal that three different women, S.H., C.B. and C.H., filed civil restraining orders against defendant from 2016-2018.

Defendant has a long history of engaging in threatening and harassing behavior toward women. In fact, the only periods in which such conduct does not seem to occur are when he is in federal custody, serving time for his various fraud schemes.

6

Defendant's repeated harassment and intimidation of women makes him a danger to the community.[1]

Defendant also poses a substantial risk of flight. The evidence in this case is overwhelming as defendant sought SBA guaranteed loans for three separate restaurants, including one that he did not own, one that was not opened since 2018 and a third that closed before the current shutdown due to loss of a liquor license. In addition, defendant and his co-conspirator communicated via email about creating fictitious documents to submit in support of their loan applications. On the fraud charges alone, defendant is facing an approximate guideline range of 37-46 months imprisonment. In addition, he is facing a mandatory consecutive sentence of two years imprisonment for committing Aggravated Identity Theft for using his brother's identity information without his consent in furtherance of the fraud scheme. In all, defendant is facing an approximate sentence of 5-6 years of imprisonment.

Defendant is clearly an intelligent man adept at deceiving others. He changed his

---

[1] In addition to the danger defendant poses to women he encounters, he also poses an economic danger to the community. This case is the third time in a little more than a decade that defendant has been charged federally with committing fraud. In 2009, he was convicted of wire fraud in the District of New Hampshire and was sentenced to 30 months of imprisonment. Shortly after the completion of that sentence, Staveley (then Kurt Sanborn) resumed his fraudulent activities and was arrested in 2013 in the District of New Hampshire on charges of wire, mail and bank fraud. In December 2015, defendant pled guilty to these charges and was ultimately sentenced to 27 months of imprisonment. Now, a short while after completing this sentence, he is charged with attempting to defraud the Small Business Administration during a national crisis. Defendant's unrelenting commission of economic crimes makes him an economic danger to the community. *See, e.g., United States v. Rocco DeSimone*, 2009 U.S. Dist. LEXIS 28793 at *5-6 (D.R.I.) (Almond, J.) (holding that economic crimes may constitute a "danger to the community" under the Bail Reform Act).

7

name following his prior federal convictions, making it difficult for those he encounters to learn of his criminal history. He commits fraud by posing as his brother and using his brother's social security number and date of birth as his own. Even now, he continues to deceive people he encounters, including informing his most recent girlfriend that he is an Intelligence Officer with the United States Navy. Defendant has the incentive to flee and the ability to do so. He is a risk of flight and the additional safeguards of home detention with electronic monitoring are appropriate to ensure his appearance at future court proceedings.

Conclusion

Defendant Staveley was provided with clear instructions by the Court that he was not to travel outside the Districts of Massachusetts or Rhode Island without the prior consent of the Probation Department or the Court. Less than three days later, defendant did exactly that, showing up uninvited at the house of a former girlfriend, causing her significant emotional distress. When confronted, defendant then lied to the Probation Officer, falsely stating that he had no contact whatsoever with C.P. in more than a week. Defendant has a long history of engaging in harassing conduct toward women and is a danger to the community and a risk of flight. The Government requests that the Court amend the order of release to add the condition of home confinement with electronic monitoring. While this condition does not completely eliminate the Government's concerns of dangerousness and risk of flight, it does provide appropriate additional safeguards. If the defendant violates any conditions set by the Court again, or acts in a manner deemed threatening or harassing toward others, the Government

will promptly seek the detention of this defendant pretrial.

                                                            Respectfully submitted,

                                                            AARON L. WEISMAN
                                                            United States Attorney

                                                            */s/ Lee Vilker*

                                                            LEE H. VILKER
                                                           Assistant U.S. Attorney
                                                           United States Attorney's Office
                                                           50 Kennedy Plaza, 8th Floor
                                                           Providence, RI 02903
                                                           401-709-5000 (tel)
                                                           401-709-5001 (fax)

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of May 2020, I caused the within Motion to be filed electronically and delivered to:

George West, Esq.

                                          /s/ Lee H. Vilker
                                          LEE H. VILKER
                                          Assistant U. S. Attorney
                                          U. S. Attorney's Office
                                          50 Kennedy Plaza, 8th Floor
                                          Providence, RI 02903
                                          401-709-5000, 401-709-5001 (fax)