UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID ADLER STAVELEY, a/k/a "Kurt Sanborn," a/k/a "David Sanborn" | Case No. 1:20-MJ-00034-LDA<br><br>**FILED UNDER SEAL** |

## GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE AND ORDER OF DETENTION

The government respectfully requests that the Court revoke defendant David Staveley's ("Staveley") $10,000 unsecured bond and detain him pending trial in this matter. The government seeks this relief because defendant violated the conditions of release set by this Court a mere three days after his arrest by traveling to Connecticut without permission to do so. The purpose of defendant's unauthorized trip to Connecticut was to meet with, harass and intimidate a woman with whom he had a brief relationship. Defendant has a long history of harassing and threatening behavior toward women and poses a danger to the community. Defendant is also a risk of flight due to the strength of evidence in this case and the likelihood that he is facing a significant sentence of incarceration. As both a danger to the community and a risk of flight, defendant should be detained pre-trial. The Government respectfully requests that the Court issue a warrant for Staveley to be arrested for the violation of a condition of his pretrial release.

Defendant's Violation of Condition of Release

Following defendant's initial appearance on May 5, 2020, the Court set conditions of release which, among other things, prohibited defendant from traveling outside the State of Massachusetts (or Rhode Island, for court appearances or to meet with counsel) without first obtaining permission of the Probation Department or the Court. The Court was very clear in expressing to defendant that it viewed the alleged conduct underlying this case as very serious and that it would not tolerate any violations of the release conditions set by the Court.  Less than three days later, defendant blatantly violated the conditions of release by travelling without authorization to Connecticut where he engaged in harassing and intimidating behavior toward C.P., defendant's former girlfriend.

On May 8, 2020, C.P. contacted an FBI agent and stated that she had been dating Staveley for a short period of time prior to his arrest in this case on May 5, 2020. C.P. did not know much about Staveley and believed him to be an "Intelligence Officer" with the United States Navy. Upon learning of Staveley's arrest, C.P. found information online concerning his prior arrests, including articles concerning Staveley's harassment of other women. C.P. informed Staveley that she did not want to see him anymore and Staveley responded with a barrage of telephone calls and text messages, indicating his desire to see her. C.P. was concerned for her safety and contacted the FBI about the alarming number of calls and text messages she was receiving from Staveley. The FBI advised C.P. to contact local law enforcement for her safety.

At approximately 1:20 p.m. on May 8, 2020, C.P. again contacted the FBI agent. C.P. stated that shortly after returning from a walk with her mother in their neighborhood in Connecticut, Staveley arrived at her home and asked her how her walk with her mother had been. C.P. felt concerned and threatened by this question as it suggested both that defendant had been watching her as she walked with her mother and that defendant wanted her to know that he was watching her. C.P. told Staveley that she had been in touch with a law enforcement official about his conduct toward her after which Staveley appeared to be in a rush to leave. As Staveley was leaving, C.P. told him that she would pray for him. Staveley responded by stating: "No, you need to pray for them." C.P. understood this to be a veiled threat against law enforcement officials. C.P. informed the FBI agent that she was afraid that Staveley would hurt her.

## Argument

Defendant Staveley should be detained pretrial as he has demonstrated an unwillingness to abide by the Court's directives, is a danger to the community and poses a risk of flight. "A person who has been released under section 3142 . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a).  Upon motion of the government, the judicial officer shall enter an order for revocation and detention, if after a hearing, the judicial officer:

> **(1)** finds that there is--
>   **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>   **(B)** clear and convincing evidence that the person has violated any other condition of release; and

>    **(2)** finds that--
>      **(A)** based on the factors set forth in section 3142(g) of this title,
>      there is no condition or combination of conditions of release that
>      will assure that the person will not flee or pose a danger to the
>      safety of any other person or the community; or
>      **(B)** the person is unlikely to abide by any condition or combination
>      of conditions of release.

Id.

"A finding of probable cause pursuant to the first prong gives rise to a rebuttable presumption that no conditions will assure that the person will not pose a danger to the safety of the community under the second prong." *United States v. Gennaco*, 834 F.Supp.2d 38, 40 (D.Mass. 2011) (upholding the revocation of the defendant's bond based upon the judicial officer's finding that there was probable cause to believe the defendant committed another crime while on pre-trial release, that the defendant violated the travel restriction, and the defendant violated the no-contact order with respect to victims or potential victims). The defendant may rebut the presumption, but even if he produces some evidence in rebuttal, the presumption "'retains evidentiary weight'" and may be used by the government in support of its motion for detention. Id.

In this case, defendant is unable to rebut the presumption of detention created by his violation of the order setting his conditions of release. First and foremost, by so quickly and deliberately flouting the Court's conditions, defendant has made clear that he cannot be trusted to abide by those conditions. This is a very serious case, involving the attempted fraud on a government program designed to help small businesses and its employees in a time of crisis. The Court very clearly emphasized to defendant the seriousness with which it views this case. Although the Court denied the Government's

recommendation for home detention, the Court made crystal clear to defendant that it would not tolerate any violations of the conditions of release it set. This warning was apparently disregarded by defendant when, less than three days later, he traveled without permission of the Probation Department or the Court to travel to Connecticut. There is nothing in defendant's long criminal history that suggests that he would comply with other conditions of release this Court could set.

Second, and most importantly, this is not a circumstance in which a defendant traveled without permission for an innocuous reason. Staveley traveled to Connecticut in order to harass and intimidate a former girlfriend, C.P., who had informed defendant that she did not wish to see him again. Defendant proceeded to barrage C.P. with text messages and phone calls and ultimately showed up at her house uninvited. Once there, defendant made sure to let C.P. know that he was watching her and her mother while they were walking. Defendant's conduct left C.P. feeling harassed, intimidated and in fear for her safety.

Defendant's harassment of C.P. is not an isolated event. In fact, his criminal record shows that he engaged in harassing and threatening conduct with at least four other women beforehand.  On June 4, 2014, defendant was arrested by the Warwick Police Department on charges of Felony Stalking/Harassment and Violation of a Protection Order. On August 28, 2014, defendant was again arrested by the Warwick Police Department, this time for Willful Trespass and Violation of a Protective Order. In October 2014, defendant entered a *nolo contendere* plea to the Willful Trespass charge and was sentenced to 6 months of probation; defendant was also ordered to have no

contact with a victim, an East Greenwich, RI woman named M.W.

On November 29, 2016, defendant was arrested by the Wayland, MA police for criminal harassment. According to press reports at the time, defendant was arrested after engaging in a series of escalating and harassing conduct toward a school principal in Wayland, MA, including bombarding this victim with text messages and following her to a restaurant. This behavior culminated in defendant putting flyers on the windshields of cars parked at Wayland Town Hall and at the local high school, stating that the woman consumes large amounts of alcohol and was promiscuous. Defendant was placed on supervised probation in November 2018 and the case was ultimately dismissed in December 2019. Records from the State of Massachusetts further reveal that three different women, S.H., C.B. and C.H., filed civil restraining orders against defendant from 2016-2018.

Defendant has a long history of engaging in threatening and harassing behavior toward women. In fact, the only periods in which such conduct does not seem to occur are when he is in federal custody, serving time for his various fraud schemes. Defendant's recent harassment of C.P. in Connecticut is just the latest in a long line of threatening, intimidating and harassing behavior defendant exhibits toward women. Defendant is a danger to the community and should be held pretrial.[1]

---

[1] In addition to the danger defendant poses to women he encounters, he also poses an economic danger to the community. This case is the third time in a little more than a decade that defendant has been charged federally with committing fraud. In 2009, he was convicted of wire fraud in the District of New Hampshire and was sentenced to 30 months of imprisonment. Shortly after the completion of that sentence, Staveley (then Kurt Sanborn) resumed his fraudulent activities and was arrested in 2013 in the District

Defendant Staveley also poses a substantial risk of flight. The evidence in this case is overwhelming as defendant sought SBA guaranteed loans for three separate restaurants, including one that he did not own, one that was not opened since 2018 and a third that closed before the current shutdown due to loss of a liquor license. In addition, defendant and his co-conspirator communicated via email about creating fictitious documents to submit in support of their loan applications. On the fraud charges alone, defendant is facing an approximate guideline range of 37-46 months imprisonment. In addition, he is facing a mandatory consecutive sentence of two years imprisonment for committing Aggravated Identity Theft for using his brother's identity information without his consent in furtherance of the fraud scheme. In all, defendant is facing an approximate sentence of 5-6 years of imprisonment.

Defendant is clearly an intelligent man adept at deceiving others. He changed his name following his prior federal convictions, making it difficult for those he encounters to learn of his criminal history. He commits fraud by posing as his brother and using his brother's social security number and date of birth as his own. Even now, he continues to deceive people he encounters, including informing his most recent girlfriend that he is an Intelligence Officer with the United States Navy. Defendant has the incentive to flee

---

of New Hampshire on charges of wire, mail and bank fraud. In December 2015, defendant pled guilty to these charges and was ultimately sentenced to 27 months of imprisonment. Now, a short while after completing this sentence, he is charged with attempting to defraud the Small Business Administration during a national crisis. Defendant's unrelenting commission of economic crimes makes him an economic danger to the community. *See, e.g., United States v. Rocco DeSimone*, 2009 U.S. Dist. LEXIS 28793 at *5-6 (D.R.I.) (Almond, J.) (holding that economic crimes may constitute a "danger to the community" under the Bail Reform Act).

and the ability to do so. He is a risk of flight and should be detained pretrial.

## Conclusion

Defendant Staveley was provided with clear instructions by the Court that he was not to travel outside the Districts of Massachusetts or Rhode Island without the prior consent of the Probation Department or the Court. Less than three days later, defendant did exactly that, traveling to Connecticut to further harass and intimidate his former girlfriend. Defendant's harassing conduct toward this woman was just the latest in a long series of similar stalking and harassing incidents with other women that have taken place since 2014. Defendant is a danger to the community and a risk of flight. The Government requests that the Court issue a warrant for the arrest of the defendant on the charge of violating a condition of his pretrial release. The Court should revoke the defendant's unsecured bond and order him detained pending trial.  There is ample evidence to prove that he violated conditions of release and he has demonstrated that he is "unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(a).

Respectfully submitted,

LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000 (tel)
401-709-5001 (fax)

CERTIFICATION OF SERVICE

On this 9th day of May, 2020, I caused the within Motion for Revocation of Release to be filed electronically and it is available for viewing and downloading from the ECF system.

LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email: Lee.Vilker@usdoj.gov

9