UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 20-074-MSM |
| v. | ) |
| | ) |
| DAVID STAVELEY | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant David Staveley ("Staveley") is due to be sentenced on September 30, 2021 on one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and one count of failure to appear in court, in violation of 18 U.S.C. § 3146(a)(1). Staveley was among the first in the country (and the first one charged) who decided to take advantage of the national crisis brought about by the COVID-19 pandemic by devising a scheme to defraud the Paycheck Protection Program ("PPP"). Along with his co-conspirator David Butziger ("Butziger"), Staveley brazenly sought to defraud the PPP by submitting fraudulent applications for $543,959 in forgivable loans for restaurants that were not in business and, in one instance, for which he had no ownership interest.

Staveley then compounded his criminal conduct by removing his electronic bracelet, staging his own suicide and leading the U.S. Marshals on a three-month hunt for his whereabouts. Staveley was ultimately apprehended in Georgia with false identification documents in his possession.

These offenses are just the latest in the string of crimes committed by Staveley, including two prior federal fraud convictions in the District of New Hampshire. Due to the seriousness of the offenses, the need to protect the public and to afford adequate deterrence, the United States

1

recommends that the Court impose a sentence of 56 months imprisonment, which is the middle of the applicable guideline range.[1]

      Seriousness of the Offense

The first sentencing factor the Court must consider under 18 U.S.C. § 3553 is the seriousness of the offense. There can be no question that the offenses committed by Staveley were extremely serious. With the country reeling from the COVID-19 pandemic and the shutdown of businesses nationwide, Staveley simply saw an opportunity to benefit himself by committing more fraud.  First, on April 6, 2020, Staveley, in the name of his brother and without his brother's knowledge or authorization, submitted a loan application under the PPP to BankNewport on behalf of Oakland Beach Restaurant Group LLC, d/b/a "Top of the Bay." The loan application was in the amount of $185,750 and fraudulently represented that Oakland Beach Restaurant Group, LLC had 26 employees and an average monthly payroll of $53,000 at the Top of the Bay restaurant in Warwick, R.I.  In reality, Staveley did not own this restaurant and had no employees and no payroll. In furtherance of this loan application, Staveley submitted fraudulent tax return documents to BankNewport that were created by his co-conspirator, Butziger.

On that same day, April 6, 2020, Staveley, again in the name of his brother, submitted a loan application under the PPP to BankNewport on behalf of Apponaug Restaurant Group LLC, d/b/a "Remington House." The loan application was in the amount of $144,050 and fraudulently represented that Apponaug Restaurant Group, LLC had 18 employees and an average monthly payroll of $46,000. In reality, the Remington House restaurant in Warwick, R.I. had been closed

---

[1] The United States agrees that defendant should receive a 3-level reduction for acceptance of responsibility. If these three levels are applied, defendant's final guideline calculation with be a Level 20, CHC IV, producing a guideline range of 51-63 months imprisonment.

since November 2018 and Apponaug Restaurant Group, LLC had no employees. In furtherance of this loan application, Staveley submitted fraudulent tax return documents to BankNewport that were created by his co-conspirator, Butziger.

Also on April 6, 2020, Staveley, in the name of his brother, submitted a loan application under the PPP to BankNewport on behalf of New Flat Penny LLC, d/b/a "On The Trax," a restaurant in Berlin, MA. The loan application was in the amount of $108,777.50 and fraudulently represented that New Flat Penny, LLC had 22 employees and an average monthly payroll of $36,000. In reality, although New Flat Penny did own and operate the On the Trax restaurant in 2019 and the beginning of 2020, the On The Trax restaurant was closed permanently on about March 10, 2020 after its liquor license was revoked. New Flat Penny, LLC had no employees when the PPP application was submitted.

Finally, on April 6, 2020, co-conspirator Butziger submitted a loan application under the PPP to BankNewport in his own name on behalf of an unincorporated entity that he called Dock Wireless. The loan application was in the amount of $105,381.50 and fraudulently represented that Dock Wireless had 7 employees and an average monthly payroll of $42,152.60. In reality, Dock Wireless had no employees and no wages were ever paid by Dock Wireless.

In total, Staveley and Butziger submitted four fraudulent PPP loans applications totaling $543,959. While the applications were pending, a concerned citizen aware of their fraudulent nature brought them to the attention of law enforcement which ultimately led to their denial by BankNewport. Though Staveley was ultimately thwarted in his attempt to obtain PPP funds, there can be no question that his intention, at the very beginning of the pandemic, was to exploit the national crisis for his own advantage. The seriousness of the offense obviously includes the large amount of attempted fraud perpetrated by this defendant. In this case, however, there is an

even greater harm. The money that defendant attempted to obtain by fraud was meant for legitimate small businesses struggling to survive after being forced to shut down due to the pandemic. It was meant to pay actual employees so that these employees could keep receiving some income when they were unable to work. This money set aside by the Government in the PPP program was not endless. In fact, many businesses struggled to obtain funding under this program due to the intense need created by the closure of much of the economy. None of this mattered to this defendant. He saw the economic emergency created by the pandemic simply as an opportunity to make himself rich by taking for himself what was meant for those in need.

Defendant exacerbated his criminal conduct after his arrest when he removed the electronic monitoring device from his body and fled. In an effort to deceive law enforcement into believing that he had died, Staveley staged his suicide on May 26, 2020, by, among other things, leaving suicide notes with family members (including his 80-year-old mother) and associates and in his car, which he left unlocked and parked by the Atlantic Ocean. Law enforcement sent a search and rescue boat into the nearby ocean in an attempt to locate Staveley's body, to no avail. Many of his family members and associates were left with the belief that Staveley had indeed killed himself, though the ones who knew him best informed law enforcement that they suspected this to be yet another scheme orchestrated by the defendant.

During the next three months, in an effort to avoid apprehension, Staveley traveled to various States using false identities and stolen license plates. The United States Marshals worked tirelessly on tracking him down even during the period in which there was uncertainty as to whether Staveley had indeed committed suicide. During this period, Staveley changed his phone number on at least five occasions. Ultimately, Staveley was apprehended by the United States Marshals Service in Alpharetta, Georgia on July 23, 2020. Staveley was found to be in

possession of multiple false identification documents that he had used throughout the period of his flight.

The seriousness of the offenses committed by Staveley calls for a very heavy sentence.

Protection of the Public

The next pertinent factor under 18 U.S.C. § 3553 is the need to protect the public. Put simply, the public needs to be protected from this defendant. Long before Staveley decided to defraud the Paycheck Protection Program, he committed serious financial crimes. In 2009, Staveley received his first federal conviction, a conviction for Wire Fraud out of the District of New Hampshire. This conviction involved defendant submitting $280,000 in false invoices from fictitious companies for services that were purportedly rendered in the construction of a baseball park. Defendant received a sentence of 30 months of imprisonment. After defendant completed this sentence, he violated his supervised release and was sentenced to an additional 3 months' imprisonment for Violation of a Trespass Order.

Defendant's second federal conviction took place in 2015, when he was again convicted of Wire Fraud in the District of New Hampshire. This offense involved a complicated mortgage fraud and bank fraud scheme that defendant orchestrated in 2003-2005. Defendant was sentenced to 27 months of imprisonment for this offense.

Defendant was also convicted in 2015 in Rhode Island of Willful Trespass. According to information provided by the East Greenwich Police Department, defendant engaged in dangerous stalking behavior of a former girlfriend, including entering her home uninvited, changing the locks in her home, hiding in the shrubs outside her place of employment and following the victim. (PSR ¶ 53) The victim obtained a restraining order and claimed that the defendant, in

addition to breaking into her house, sent her harassing texts, emails and voice mails, hacked her private messages and her bank account and made homicidal threats.

These prior arrests and convictions did nothing to stop the defendant from committing further crimes. This defendant has shown that he will continue to find ways to defraud others. The public needs to be protected from him.

### Need to Afford Adequate Deterrence

As with most federal criminal cases, there exists a strong need for deterrence. White-collar defendants who commit fraud are by and large rational actors who weigh the pros and cons of their criminal conduct before undertaking it. Giving a heavy sentence to a defendant like Staveley who has made a career out of defrauding others would send a powerful message. It would also send the important message that significant punishment is to follow for anyone who attempts to capitalize on national emergencies by committing fraud.

There is also a strong need for individual deterrence in this case. The sentences defendant received in his prior federal fraud cases – 30 and 27 months, respectively – obviously did not deter defendant from committing more fraud. When the coronavirus crisis hit this country, he saw only the opportunity to benefit himself by submitting fraudulent PPP loans in his brother's name. A significant sentence – well above those defendant received in his prior cases – is necessary for there to be any hope of deterring Staveley from committing additional fraud.

### Personal Characteristics of the Defendant

The defendant reported to Probation Department that he was a victim of trauma and that he suffers from mental health issues as a result. The United States has no knowledge of the facts

underlying defendant's professed trauma but takes defendant at his word that he suffers from mental health disorders.

One fact that is painfully clear from the Presentence Report is that defendant still blames others for his own independent decisions to commit crimes. When explaining why he committed the instant offense of defrauding the Paycheck Protection Program, defendant told Probation that he did so because he was in a bad relationship at the time and was experiencing trauma. (PSR ¶ 78) The Government does not comprehend how a difficult relationship can be to blame for defendant's own decision so submit hundreds of thousands of dollars in fraudulent loan applications.

Defendant then attempts to explain away his decision to cut off his bracelet and flee by blaming his co-conspirator Butziger. Defendant claims that Butziger told him to remove his electronic monitoring equipment and to drive south. (PSR ¶ 80). According to defendant, he was "blacking out and never got to his destination" until he was found by the Marshals in Georgia. Id. Defendant neglects to mention how he staged his own suicide, sent suicide notes to friends and family members, changed his phone regularly and used numerous false identities to elude capture.

Defendant simply seems incapable of taking full responsibility for his own choices in life. No one forced him to defraud the government in the midst of a national crisis. No one forced him to stage his own suicide and abscond. He committed these acts voluntarily and willfully. Until defendant accepts his own responsibility for his conduct, there is little to no chance of him refraining from criminal behavior in the future.

For all of the foregoing reasons, a sentence of 56 months of imprisonment is sufficient, but not greater than necessary, to punish the defendant, promote respect for the law, protect the public, and afford adequate deterrence.

Respectfully submitted,

RICHARD B. MYRUS
ACTING UNITED STATES ATTORNEY

_/s/ Lee Vilker_

LEE H. VILKER
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that on this 24th day of September 2021, I caused the within Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

                                    /s/ Lee H. Vilker
                                    LEE H. VILKER
                                    Assistant U. S. Attorney,
                                    U. S. Attorney's Office
                                    50 Kennedy Plaza, 8th Floor
                                    Providence, RI 02903
                                    401-709-5000, 401-709-5001 (fax)