UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
UNITED STATES                 )
                              )
      v.                      )      Cr. No. 20-074 WES
                              )
DAVID STAVELEY,               )
                              )
            Defendant.        )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Defendant David Staveley has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 in the above-captioned matter.  See Mot. to Vacate, ECF No. 79.  The government has filed a response to the Motion to Vacate.  Gov't Resp., ECF No. 117.  The Court has determined that no hearing is necessary.  For the following reasons, the Motion to Vacate is DENIED and DISMISSED.[1]

I.   Background and Travel

As recounted by the Court of Appeals for the First Circuit:[2]

When the COVID-19 pandemic ravaged the nation, Congress created emergency financial assistance programs to

---

[1] Staveley has also filed several additional motions, which will be addressed at the end of this Memorandum and Order.

[2] The First Circuit took these facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report ("PSR"), and the transcript of the sentencing hearing. United States v. Staveley, 43 F.4th 9, 11 (1st Cir. 2022).

ameliorate the economic consequences wrought by the crisis. One of these programs—the Paycheck Protection Program (PPP)—provided small businesses with funds necessary to meet their employees' salaries and other operating expenses.

In April of 2020, the defendant—along with a co-conspirator—submitted several false and fraudulent loan applications seeking PPP funds. Those applications were ostensibly made on behalf of various entities, claiming that the entities had several employees and large payrolls. In reality, those entities—at the time the applications were made—either had no employees at all or paid out no wages in the relevant time frame.

After these machinations came to light, the defendant was charged by criminal complaint in the District of Rhode Island. The affidavit accompanying the complaint alleged in substance that the defendant had committed bank fraud, had conspired to commit bank fraud, and had perpetrated other federal crimes. While awaiting trial, the defendant was released on personal recognizance and was later required to stay in home confinement.

In disregard for the conditions of his release, the defendant fled from the state. To avoid apprehension, he staged a fake suicide and—while on the lam—used false identities and stolen license plates. Those events led to an additional federal charge for failing to appear in court.

Staveley, 43 F.4th at 11-12 (internal citations omitted).

Staveley was apprehended by the United States Marshal Service in Alpharetta, Georgia, on July 23, 2020. Tr. of May 17, 2021, Change of Plea Hrng. ("Plea Hrng. Tr.") 24, ECF No. 68; see also Tr. of October 7, 2021, Sentencing Hrng. ("Sent. Hrng. Tr.") 17, ECF No. 69. In the meantime, he had missed a court appearance scheduled for June 2, 2020. Plea Hrng. Tr. at 24. Staveley was subsequently indicted by a grand jury in the District of Rhode

Island.  See Staveley, 43 F. 4th at 12; see also Indictment, ECF No. 27.

On May 17, 2021, Staveley pleaded guilty to two counts of the Indictment, charging him with conspiracy to commit bank fraud (Count 1) and failure to appear in court as required (Count 7). See Plea Hrng. Tr. at 26; Plea Agrmt. ¶ 1, ECF No. 42; see also Staveley, 43 F.4th at 12.  In exchange, the government agreed to recommend a sentence within the range determined by the U.S. Sentencing Guidelines ("USSG" or the "Guidelines") and to dismiss the remaining counts (Counts 2-6)[3] of the Indictment at the time of sentencing.  Plea Hrng. Tr. at 11-12; see also Sent. Hrng. Tr. at 20, 54; Plea Agrmt. ¶ 2.

Staveley was sentenced on October 7, 2021, to an aggregate term of 56 months of incarceration, followed by three years of supervised release.  Sent. Hrng. Tr. at 63; J. 2-3, ECF No. 51; see also Staveley, 43 F.4th at 12.  He filed a Notice of Appeal, ECF No. 53, as well as a motion for reconsideration, ECF No. 59. The latter was denied by text order dated October 19, 2021.  The First Circuit dismissed Staveley's appeal without prejudice to bringing his ineffective assistance of counsel claims in a motion

---

[3] Counts 2-6 included three counts of bank fraud, one count of making false statements to influence the Small Business Administration ("SBA"), and one count of aggravated identity theft.  See Indictment ¶¶ 23-36.

to vacate.  Staveley, 43 F.4th at 19; see also First Circuit Op., ECF No. 72.  Staveley did not seek further review.  See Mot. to Vacate at 2.[4]

On August 29, 2022, Staveley timely filed the instant Motion to Vacate.

II.  Legal Standard

A.    Section 2255

Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Generally, the grounds justifying relief under 28 U.S.C. § 2255(a) are limited.  A court may grant relief pursuant to § 2255 in instances where the court finds a lack of jurisdiction, a constitutional error, or a fundamental error of law.  United States v. Addonizio, 442 U.S. 178, 185 (1979).  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a

---

[4] Page numbers reflect the pagination generated by the Court's Electronic Filing System ("ECF").

4

complete miscarriage of justice." Id. (internal quotation marks omitted); see also Rosario-Rosado v. United States, CIVIL NO. 21-1431 (RAM), 2023 WL 2665594, at *1 (D.P.R. Mar. 27, 2023) ("[A]part from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal exceptional circumstances that make the need for redress evident." (quoting David v. United States, 134 F.3d 470, 474 (1st Cir. 1998))) (alteration in original). Moreover, § 2255 is not a substitute for a direct appeal. Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (citing cases).

   B.   Strickland Standard

   The standard for analyzing a claim of ineffective assistance of counsel stems from Strickland v. Washington, 466 U.S. 668 (1984), which provides a two-pronged test for evaluating such claims. Kholi v. Wall, CA No. 14-307-JJM, 2015 WL 567148, at *4 (D.R.I. Feb. 10, 2015). Under the "performance prong" of the Strickland test, a defendant must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the "prejudice prong," a defendant must show that "the deficient performance prejudiced the defense." Id. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

Strickland instructs that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689; see also id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

The same principles apply in the context of guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Hill Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of

6

counsel." Id. at 58; see also Padilla v. Kentucky, 559 U.S. 356, 371 n.12 (2010) ("In Hill, the Court recognized—for the first time—that Strickland applies to advice respecting a guilty plea."). The first prong of the Strickland test is "nothing more than a restatement of the standard of attorney competence" described above. Hill, 474 U.S. at 58.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 59; see also Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."); Padilla, 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). These predictions, as the Supreme Court reiterated in Hill, should be made objectively. See 474 U.S. at 59-60.

III. Discussion

A.  Motion to Vacate

Staveley argues that he received ineffective assistance of counsel from two attorneys who represented him during these

7

proceedings, Mark Josephs and Jason Knight, on several grounds. The bottom line is this: Staveley has not demonstrated prejudice under Strickland with respect to any of his claims regarding counsel's actions and/or omissions. Accordingly, the Motion to Vacate must be denied.[5]

### 1. Mark Josephs

Although Staveley makes no allegations against Josephs in the Motion to Vacate itself, he does so in other filings.[6] Accordingly,

---

[5] Under Strickland, a defendant must make both showings. See 466 U.S. at 687. Accordingly, because Staveley has failed to demonstrate prejudice, the Court need not address the performance prong. See id. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

[6] In addition to the allegations against Josephs, Staveley also seeks to add another claim against trial counsel as well as a claim against the government. See Mot. for Leave to Amend Pet. 23 ("Mot. to Amend"), ECF No. 113; Mot. to Show Prosecution/US Attorney Failed to Provide Exculpatory Evidence 6-7 ("Mot. to Show Failure to Provide"), ECF No. 82; Mot. Identifying Prejudice Egregious Performance—Ineffective Counsel ("Mot. Identifying Prejudice") 1-3, ECF No. 83. The former is currently pending; the latter two were denied without prejudice by text order on September 15, 2022, with the notation that: "These Motions include allegations that are part of the Petitioner's Motion to Vacate and will be addressed when that motion is addressed by the Court."

the Court addresses Staveley's contentions that Josephs provided ineffective assistance.

According to Staveley:

Attorney Josephs represented Defendant in the early stages of these proceedings, a period of eight (8) months, during which time he did not communicate with the Defendant, did not show or zealously assert evidence showing an illegal search and never brought proof of Defendant's location which would have from the outset prevented negative court action upon the Defendant. Josephs during his term of representation of the Defendant took no action on the Defendant's behalf, as displayed in [the] Court Docket, other than filing a withdrawal without prior knowledge/notice or assent of the Defendant and to file a motion for compassionate release for which the Defendant was not yet entitled.

Def.'s Reply 3 ("Reply"), ECF No. 125; see also Mot. Identifying Prejudice at 1-3.

The Court need not address in detail Staveley's allegations against Josephs because Staveley has not shown that he was prejudiced by Josephs' actions or omissions, i.e., that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.[7]    The Court, therefore, rejects Staveley's claim that he received ineffective assistance from Josephs.

---

[7] It is true that the motion for compassionate release was initially not filed under seal, see Docket, despite containing deeply personal information.    That was error on Josephs' part. However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

2.   Jason Knight

Staveley first alleges that Knight failed to provide him with discovery materials prior to his signing the Plea Agreement.  Mot. to Vacate at 4.  Although it strains credulity to believe that Knight did not go over the evidence with Staveley before the change of plea hearing, even assuming, arguendo, that that is the case, Staveley heard the government's recitation of the facts of the case during the plea colloquy and agreed that they were accurate. Plea Hrng. Tr. at 20-26.

At the outset of the hearing, the Court asked Staveley if he had received a copy of the Indictment and had discussed it with Knight; whether he had had an opportunity to read and discuss the plea agreement with Knight before signing it; whether he understood all the terms of the plea agreement; whether he was satisfied with Knight's representation; whether he understood that the terms of the plea agreement were recommendations which the Court could reject without allowing him to withdraw the plea and could sentence him to a sentence more severe than he may anticipate; whether he understood that he was pleading guilty to felony offenses and that if the Court accepted the plea and adjudged him guilty of those offenses he could be deprived of certain valuable civil rights. Id. at 9-11.  To all these questions, Staveley responded affirmatively, and he further denied that anyone made any promises

10

or assurances to him not contained in the plea agreement, or threatened him in any way, to persuade him to accept it.  Id.

The Court then asked the government to place on the record the elements of the two charges to which Staveley was pleading guilty and the facts that the government would prove if the case went to trial.  Id. at 18-19.  The Court advised Staveley to "[l]isten carefully.  At the end I'm going to ask you if you have any questions and if you agree that those are the facts the Government would present."  Id. at 19.

After listening to the government's lengthy and detailed recitation of the facts it would prove at trial, id. at 20-24, Staveley stated that he agreed with the government, id. at 25. The Court asked:

> THE COURT:    All right.  Do you understand that you're admitting that those are the facts that the Government would prove if this case were to go to trial?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT:    And you're admitting to those facts?
>
> THE DEFENDANT: Yes, your Honor.

Id. 25-26.  Then Court asked Staveley how he wished to plead, guilty or not guilty.  Id. at 26.  Staveley replied, "Guilty, your Honor."  Id.

The Court found that Staveley was "fully competent and capable of entering an informed plea" and that "the plea of guilty is a

knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the two charges." Id. at 26.  Accordingly, the Court accepted the plea.  Id.; see, e.g., United States v. Spinks, 63 F.4th 95, 102 (1st Cir. 2023) ("[T]he 'district court [is] entitled to rely on the defendant's representations that he was satisfied with his counsel's handiwork, that he had reviewed the terms of the plea agreement with his counsel, and that he understood all of those terms.'" (quoting Staveley, 43 F.4th at 15)) (second alteration in original); see also Lee v. United States, 582 U.S. 357, 369 (2017) (noting that courts "should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences"); Strickland, 466 U.S. at 689.

Whether Staveley viewed the actual evidence prior to signing the plea agreement, Mot. to Vacate at 4, he clearly heard the evidence during the plea colloquy.  Surely, he was not hearing these facts for the first time.  Were that the case, logic dictates that he would not, under oath, have agreed with and admitted to the government's recitation.  See, e.g., Spinks, 63 F.4th at 102; see also Staveley, 43 F.4th at 16 (noting "copious evidence that

he fully understood his plea agreement and was satisfied with his representation").

Staveley now says, in his Reply, that "[b]ut for Attorney Knight's failure to provide Defendant with discovery materials and to review those materials with Defendant, Knight's repeated improper threats to withdraw in a prejudicial manner and his failure to request a continuance at sentencing as requested by Defendant, the Defendant would have proceeded to trial." Reply at 14.[8] This argument is too little too late.

Leaving aside the fact that Staveley's argument that he would have gone to trial is not in the Motion to Vacate but, rather, appears for the first time in his Reply, see United States v. Tosi, 897 F.3d 12, 15 (1st Cir. 2018) ("[A]rguments available at the outset but raised for the first time in a reply brief need not be considered."), and is undeveloped, see Barreto-Barreto v. United States, 551 F.3d 95, 99 (1st Cir. 2008) (declining to address argument that petitioners "do not develop . . . beyond this assertion"), such a decision would not have been "rational under the circumstances" of the case, Padilla, 559 U.S. at 372.

---

[8] The "threats to withdraw" Staveley mentions presumably relate to his fourth ground for relief, discussed infra. The request for continuance at sentencing to which Staveley refers constitutes ground two of the Motion to Vacate, also addressed infra.

For example, looking only at the two counts to which Staveley pleaded guilty, he could have received a statutory maximum sentence of 40 years in prison — 30 years for the conspiracy charge and a 10-year consecutive sentence for failing to appear in court.  See PSR ¶ 117.  Instead, he was sentenced to an aggregate 56-month term of incarceration, Sent. Tr. at 63; J. at 2, within the advisory guideline range of 51-63 months incarceration, Sent. Hrng. Tr. at 12, 20; see also Plea Agrmt. ¶ 2a.

Further, the government agreed to — and did — dismiss Counts 2-6 of the Indictment as part of the Plea Agreement.  See Sent. Hrng. Tr. at 54; Plea Agrmt. ¶ 2e.  Had Staveley been found guilty of these additional counts, he would have been facing additional prison time.  As the government notes, the aggravated identity theft count (Count 6) alone carries a mandatory minimum consecutive sentence of two years.  Gov't Resp. at 15; see also 18 U.S.C. § 1028A(a)(1), (b)(2).  Under these circumstances, the Court cannot find that rejecting the plea would have been a rational choice.  See Padilla, 559 U.S. at 372.

The Court is aware that Staveley and Knight have differing memories of what Knight did or failed to do.  However, no matter whose account is more accurate, Staveley has not shown "a reasonable probability that, but for counsel's unprofessional

14

errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694.

Second, Staveley faults Knight for his failure to seek a
continuance at sentencing. Mot. to Vacate at 5. According to
Staveley, during the sentencing hearing the Assistant U.S.
Attorney ("AUSA") indicated that Staveley "was a liar, regarding
being sexually assaulted by a [Federal Bureau of Prisons] guard
some years earlier." Id. Staveley avers that Knight "not only
did not object, but was aware there was a U.S. Federal Court
ordered psychological report available that would demonstrate the
Defendant was truthful." Id.

During the sentencing hearing, the AUSA stated:

I do want to spend a little while talking about this
Defendant as an individual because I know that's what
Mr. Knight is probably going to be spending a significant
amount of time on. I don't really think it's appropriate
for me in this venue to talk about the allegations that
the Defendant made in the past. All I would say on that
point, your Honor, is reading through the presentence
report, there's a lot of mixed information on that and
it's very unclear. I'm not saying it didn't happen, I
just don't know; and I don't think the Court can just
accept this Defendant's word that that happened. It may
have; if it did, you know, I'm deeply sorry and I can't
imagine how horrible it is, but there's no factual basis
one way or the other.

Sent. Hrng. Tr. at 20-21.

It is true that Knight did not object at the time. See id.
But, when it was his turn to argue for a recommended sentence, he
asked the Court "to strongly consider compassion in this case as

15

you figure out what to do about David Staveley and his sentence. And I'm asking you to consider the man." Id. at 25.  Knight noted that he had provided the Court with a detailed memo, which the Court stated it had read.  Id.  The Court continued:

> THE COURT:    You're free to go over anything you and your client want, but I know there are personal details in there.

> MR. KNIGHT:    Right.  But I will say this.  He's got bad PTSD, and the Government says that the source of that PTSD, that is an allegation.  But I gave the Court medical records showing that the providers, the medical providers believe it is the case, it is the diagnosis. And a correctional setting, because of the nature of the event, is what causes that PTSD; it's what triggers him. And they are back, those symptoms, so bad that he ran to avoid jail, which is documented in Count VII.

Id. at 25-26.

It is clear from the foregoing that Knight was well aware of Staveley's prior experience, that Staveley carried a diagnosis of PTSD as a result, that he had obtained medical records, and that he had provided those medical records to the Court.[9]  There was,

---

[9] In sentencing Staveley, the Court recognized the need for compassion:

> But I am also mindful of the other factors under 3553(a) besides deterrence of you and deterrence of the public; and that the idea that you're an individual human being who deserves individual sentencing is absolutely true, that you deserve my compassion and the compassion of this court is absolutely true as well, and you have that.

> The fact that serving time in prison for you is more difficult because of the PTSD and the things that you've been through, it is something that is awful and that

therefore, no need for Knight to seek a continuance to further
investigate (and disprove) the AUSA's statements, and Staveley was
not prejudiced by Knight's failure to do so at that point.  See
Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("Counsel is not
required to waste the court's time with futile or frivolous
motions." (quoting United States v. Wright, 573 F.2d 26, 27 (1st
Cir. 1978))).  Staveley's second claim is therefore rejected.

    Relatedly, Staveley alleges that the AUSA withheld
exculpatory evidence from the defense and the Court.  See Mot. to
Vacate at 5 (noting that AUSA was in possession of the document in
question and did not reveal it to the Court or provide it to the
defense); Mot. to Show Failure to Provide at 7-8.  The "exculpatory
evidence" in question is a psychological report ordered by the
District of New Hampshire and completed in late June of 2015 by a
BOP psychiatrist at Brooklyn MDC.  Mot. to Show Failure to Provide
at 6.  This claim is baseless.

    In Brady v. Maryland, 373 U.S. 83 (1963),

---

this Court cannot pretend to understand, but it's also
a risk that you knew you were taking at the time that
you were engaging in this behavior.

Sent. Hrng. Tr. at 61-62; see also Staveley, 43 F.4th at 17 ("At
the disposition hearing, the district court acknowledged the
defendant's PTSD 'and the things that [the defendant had] been
through,' which strongly indicates that the court gave at least
some credit to the defendant's allegations of assault.")
(alteration in original).

the Supreme Court held that the government's suppression of evidence favorable to the accused violates due process if the evidence is material to guilt or punishment.  To prevail on a Brady claim, "petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)."

Bucci v. United States, 662 F.3d 18, 38 (1st Cir. 2011) (quoting Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005)).  To satisfy the prejudice, or materiality, prong, "the petitioner must show there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Id. (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)).

Staveley has not met any prong of the Brady test — favorability, suppression, or materiality.  See Bucci, 662 F.3d at 38.  Staveley's allegation that the AUSA withheld evidence is pure speculation.  See Mot. to Show Failure to Provide at 7 ("[B]eing that many other psychological documents were offered from the BOP in discovery, specifically other documents that were in the same file as the Court ordered Psychological Report, it can only be determined this key document was withheld and obstructed by the Prosecution."); see, e.g., United States v. Martinez Castro, Criminal Action No. 15-10338-FDS-56, 2023 WL 2529635, at *2 (D.

Mass. Mar. 15, 2023) (noting that court "need not give weight to conclusory allegations").

Moreover, Staveley has not shown that the report in question was exculpatory in any way.  If anything, the report was relevant to sentencing, not guilt or innocence, and it is obvious from their statements, quoted above, that both Knight and the Court were aware of its contents (as was Staveley himself).  Thus, whether Knight received the report is irrelevant to the materiality, or prejudice, question, as the incident and diagnosis described therein were known to Knight (and the Court) at the time of sentencing.  In short, even assuming Staveley's allegation regarding the AUSA withholding the report is true, Staveley has not shown a "reasonable probability" that the non-disclosure affected the outcome of the proceeding.  Barrett v. United States, 965 F.2d 1184, 1189 (1st Cir. 1992) ("The materiality test under Brady is not met unless the nondisclosure of the evidence 'undermine[s] confidence in the outcome of the trial,' which can occur only if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (quoting United States v. Bagley, 473 U.S. 667, 682 (1985))) (alteration in original) (internal citation omitted); see also Vieux, 184 F.3d at 64.

Third, Staveley contends that counsel failed to assist in filing necessary motions relating to his direct appeal until the Court of Appeals explicitly ordered him to "effectively represent [his] client . . . until relieved." Mot. to Vacate at 6; see also id., Ex. D; 1st Cir. R. 46.6(a). Knight responds that he does not do appellate work and was not aware of the rule cited by the First Circuit. Mot. to Vacate, Ex. C at 80 ¶ 7.

In any event, after receiving the First Circuit's order, Knight filed the necessary paperwork, the appeals court appointed new counsel for Staveley, and his appeal progressed. Id. at 60 ¶ 20. Therefore, he cannot claim prejudice from Knight's lack of immediate action. Staveley's third claim of error is meritless.

Lastly, Staveley alleges that Knight falsified documents, specifically the date on a fee agreement. Mot. to Vacate at 8. He states that "Knight represented the Defendant without a Contract/Fee Agreement in place[,] only a verbal agreement for fees with Defendant's 81 year old mother." Id. According to Staveley, after several months of representation, Knight "approached the Defendant with only a signature page of a[n] agreement." Knight states that he had lost the original copy and was simply replacing it in his files. Mot. to Vacate, Ex. C at 60 ¶ 18; id. at 76 ¶ 3; id. at 80. Staveley signed, but refused to date the document, Mot. to Vacate at 8, and Knight later inserted the original date

he says the original agreement was executed, id., Ex. C at 76 ¶ 3.
Staveley also complains that Knight never provided billing
statements, itemized invoices, or agreement terms.  Mot. to Vacate
at 8.

Disputes between Staveley and Knight regarding Knight's
billing practices are not relevant to a motion to vacate.  Section
2255 provides a remedy for sentences imposed in violation of the
Constitution or laws of the United States, without jurisdiction,
in excess of the maximum authorized by law, or otherwise subject
to collateral attack.  28 U.S.C. § 2255(a); Addonizio, 442 U.S. at
185.  Section 2255 simply does not apply to billing disputes.
Accordingly, the Court rejects Staveley's fourth ground for
relief.

B.   Pending Motions

1.   Motion for Leave to Amend (ECF No. 113)

Staveley has also filed a Motion for Leave to Amend Petition
under 18 U.S.C. § 2255.  In it, he seeks to add an additional
allegation against Knight, in essence a conflict-of-interest
claim.  According to Staveley:

> Information has recently come to Staveley's attention
> surrounding the relationship between Staveley's counsel,
> who never revealed or informed his client that Knight
> was an elected official, part of the State General
> Assembly, and a member of the House of Representatives
> leadership.  Knight never disclosed his relationships
> with elected officials from Warwick, R.I[.] or his
> communication with these individuals who are very

21

> powerful elected officials.  Both the Speaker and Sen.
> M. McCaffrey are from Warwick and were or had an
> involvement in matters relevant to these proceedings
> which Knight undoubtedly was aware of and did not
> disclose.

Mot. for Leave to Amend ¶ 5.  This motion is frivolous and is
denied.  First, Staveley provides no information on how Knight's
relationship with fellow legislators affected the "matters
relevant to these proceedings" or what "involvement," if any, they
had in these proceedings.  Moreover, Staveley's statement that
Knight "undoubtedly was aware" of this involvement is pure
speculation.  See United States v. McGill, 11 F.3d 223, 225 (1st
Cir. 1993).  The fact that the two named legislators are from
Warwick and two of the restaurants involved in the allegations are
in Warwick is not enough on which to base an allegation of
ineffective assistance of counsel based on a conflict of interest.

    2.  Emergency Motion to Extend Time (ECF No. 123)

  Staveley's emergency motion to extend the time in which to
respond to the government's opposition to the Motion to Vacate is
denied as moot.  Staveley filed his Reply, ECF No. 125, on December
21, 2022.

    3.  Motion to Compel (ECF No. 124)

  In his Motion to Compel Return of Defendant's Property,
Staveley seeks the return of his property, other than his
Massachusetts driver's license, that he states has not yet to be

returned to him.  Mot. to Compel at 2.  The government responds that it has contacted various law enforcement agencies which may have personal items to return to Staveley.  Gov't's Resp. to Def.'s Mot. to Compel Return of Def.'s Property 1-2, ECF No. 126.  These agencies have responded that they either have no documents, have documents and have unsuccessfully attempted to return them to Staveley, or have fraudulent identification documents which will not be returned.  See id.  Based on the representations in the government's response, Staveley's Motion to Compel is denied.

        4.   Emergency Motion to Enlarge Time (ECF No. 128)

Through this motion, Staveley seeks an enlargement of time to reply to the government's response to his Motion to Compel. However, he filed his reply, ECF No. 130, on January 23, 2023. Accordingly, the motion to enlarge is denied as moot.

IV.  Conclusion

Based on the foregoing, the Court finds that Staveley has not met the Strickland standard in that he has failed to demonstrate prejudice from Attorneys Josephs' and Knight's actions or omissions.  Accordingly, the Motion to Vacate, ECF No. 79, is DENIED and DISMISSED.  Staveley's remaining motions are DENIED for the reasons stated above.  Specifically, his motion to amend, ECF No. 113, is DENIED; his motion to extend time, ECF No. 123, is

DENIED as MOOT; his motion to compel, ECF No. 124, is DENIED; and his motion to enlarge time, ECF No. 128, is DENIED as MOOT.

<u>RULING ON CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because Staveley failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Staveley is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  August 11, 2023